UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LANONT DALVEN HODGES,

                Hodges,                Case No. 1:18-cv-11267
                                            Hon. Thomas L. Ludington

v.

TONY TRIERWEILER,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS**

Lamont Dalven Hodges, ("Hodges"), is a Michigan prisoner who was convicted after a bench trial in the Wayne County Circuit Court of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, carrying a concealed weapon Mich. Comp. Laws § 750.227, possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d), and commission of a felony with a firearm – third offense. Mich. Comp. Laws § 750.227b. Hodges was sentenced to 2-7.5 years for the concealed weapon conviction and a consecutive 10-year term for his third-offense felony-firearm conviction, creating an effective sentence of 12-17.5 years.

He has now filed a habeas petition under 28 U.S.C. § 2254. The petition, filed through counsel, asserts two grounds for relief: (1) the police did not have reasonable suspicion to conduct a *Terry* stop and his counsel was ineffective for failing to move to suppress the marijuana and handgun found in his possession and (2) the police failed to ascertain the identity of eyewitnesses at the scene and the prosecutor failed to produce them at trial. Hodges's claims are without merit and the petition will be denied.

**I.**

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was arrested by two Detroit Transit Corporation police officers who approached him at the 360 Rosa Parks Transit Center while he was rolling a marijuana cigarette. One officer testified that as he walked toward defendant, he asked defendant to put his hands up and "keep them where I could see them." Instead, defendant reached toward the right pocket of his sweatshirt, and the officer put a hand on defendant to restrain him. As he was restraining defendant, a firearm apparently fell out of the pocket of defendant's sweatshirt and was recovered from the ground. While searching defendant following his arrest, the officers discovered 17 baggies of marijuana in the pocket of his sweatshirt.

*People v. Hodges*, 2017 WL 431792, at *1 (Mich. Ct. App. Jan. 31, 2017).

After his conviction and sentence, Hodges filed a direct appeal in the Michigan Court of Appeals. His brief on appeal raised two claims:

> I. Whether the stop and seizure of Defendant were not based on reasonable suspicion and the evidence should have been suppressed; the error was plain or, in the alternative, counsel was ineffective for failing to move to suppress the evidence.
>
> II. Whether Defendant was deprived of due process and the right to compulsory process when the prosecution failed to notify the defense of the res gestae witnesses who were present during the incident.

The Michigan Court of Appeals affirmed Hodges's convictions in an unpublished opinion. *Id*. Hodges then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Hodges*, 900 N.W.2d 874 (Mich. 2017) (Table).

**II.**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal courts must presume state courts' factual findings to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.

### A.

Hodges's first claim asserts that the police officers' stop and frisk of him at the transit center violated his Fourth Amendment rights because the officers could not have seen that he was rolling a marijuana cigarette as opposed to a tobacco cigarette. He asserts that had his trial counsel raised this issue in a motion to suppress the evidence seized from him—the handgun found on the ground and the seventeen packets of marijuana found on his person—the charges against him would have been dismissed for lack of evidence.

After reciting the controlling constitutional standards, the Michigan Court of Appeals rejected these arguments on the merits as follows:

> Here, Officer Robert McArthur testified that he approached defendant from defendant's side, not from the rear.[1] Further, he testified that he was only about five or six feet away from defendant when he observed him "rolling what appeared to be a marijuana cigarette." McArthur also stated that during his lengthy career in law enforcement, he had seen marijuana numerous times, including while working with the Drug Enforcement Agency and the narcotics division of the Inkster Police

- 3 -

>Department. Based on his experience, the officer recognized the substance in defendant's possession as marijuana because of its green, rather than brown (like tobacco) color. Thus, contrary to defendant's assertion on appeal, McArthur did not approach defendant from behind—thus, he was able to clearly see defendant roll his cigarette. Moreover, the evidence shows that McArthur possessed sufficient knowledge to be able to distinguish between tobacco and marijuana from a short distance away. Accordingly, we hold that the facts were sufficient to raise a reasonable suspicion in Officer McArthur's mind in order for him to conduct an investigatory stop of defendant and that the seized marijuana and handgun were not the fruit of an illegal search.[2]
>
>----
>[1]Officer McArthur's partner, Officer Charles Corley, testified that he approached defendant from the rear.
>
>[2]Defendant's alternate argument that his trial counsel was ineffective for failing to raise this issue at the trial court also fails because counsel is not ineffective for failing to raise a meritless issue. See *People v. Ericksen*, 288 Mich. App. 192, 201 (2010).

*Hodges*, 2017 WL 431792, at *1

To the extent Hodges raises this claim under the Fourth Amendment, it is not cognizable in a federal habeas action. Review of Fourth Amendment claims is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, provided the state has given the petitioner a full and fair opportunity to litigate the claim. *Id; see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). Michigan affords criminal defendants procedural mechanisms to raise Fourth Amendment challenges in state court. Hodges is barred from raising such a claim here. *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

Although *Stone* precludes direct consideration of Hodges's Fourth Amendment claim, the merit of the challenge nevertheless becomes relevant because of Hodges's claim of ineffective assistance of counsel claim. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court

stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375. Accordingly, it is appropriate for the Court to consider the merits of Hodges's Fourth Amendment claim to determine whether Hodges's counsel preformed deficiently by failing to move to suppress the evidence found on Hodges and to determine whether Hodges was prejudiced by that failure.

The justification for the officers' detention and search of Hodges at the bus station, if any, rests with the familiar principles of *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *Terry* allows a law enforcement officer to conduct a "temporary investigative stop" so long as he has "reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the time of the stop." *Embody v. Ward*, 695 F.3d 577, 580 (6th Cir. 2012) (internal quotation marks and citation omitted). "Reasonable suspicion" is "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Prado Navarette v. California*, 572 U.S. 393, 396 (2014)). It requires more than "an inchoate and unparticularized suspicion or hunch," *Terry*, 392 U.S. at 27, but it is "obviously less demanding than probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Likewise, reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

Hodges asserts that because the officers approached him from behind, they could not have seen that he was rolling a marijuana cigarette and therefore, had no reasonable suspicion that he was engaged in criminal activity when they stopped him. He acknowledges that one officer testified at trial that he saw Hodges rolling marijuana, but he argues that the other officer's

testimony that he could not see the front of Hodges created an adequate conflict to compel counsel to move for suppression.

The record does not support Hodges's claim. Officer Robert McArthur testified that he and Officer Charles Corley were on foot patrol at the Rosa Parks Transit Center on the date in question. ECF No. 6-10, at 6-8. The area of the transit center where the encounter occurred consists of an outdoor enclosure containing several groups of semi-circular cement benches on which pedestrians may sit. McArthur testified that he saw Hodges sitting on one of the cement benches rolling a marijuana cigarette. *Id.* at 8. McArthur was approaching from about 5 or 6 feet away when he observed Hodges. *Id.* He recognized the substance as marijuana based on his experience as a law enforcement officer. *Id.* 8-9. He had previously worked for years for the DEA and the Inkster Police Department narcotics unit, making him familiar with the appearance of marijuana. *Id.*

McArthur testified that Hodges was seated in the middle of one of the cement benches and approached from Hodges's left side. *Id.* at 9. Hodges saw the officers, looked up in surprise, and dropped the cigarette. *Id.* at 10. McArthur saw Hodges reach for his right pocket, prompting McArthur to grab onto Hodges. *Id.* at 11. The two struggled and McArthur yanked Hodges to the ground by his hood. *Id.* at 12. McArthur then saw a handgun fall from Hodges's right side to the ground and assumed that it fell from Hodges's pocket. *Id.* at 12-13. Hodges was handcuffed and the officers discovered 17 individual packets of marijuana on his person. *Id.* at 17.

On cross-examination, McArthur testified that there was a female sitting near Hodges on the bench, but he did not believe that they were sitting together. *Id.* at 19. McArthur confirmed that he approached Hodges from Hodges's side. He believed that the substance Hodges was rolling was marijuana because he saw that it was green and not brown like tobacco. *Id.* at 20. McArthur

explained that the gun must have fallen from Hodges because it was not lying on the ground when he first approached. *Id.* at 23.

Officer Corey testified at trial that he approached Hodges from the rear, on Hodge's left side. *Id.* at 33. Corey testified that he saw Hodges's back as he approached and he could not see Hodges's front. *Id.* at 43-44. Nevertheless, Corey testified that as he walked towards Hodges, he could see that Hodges was rolling "something." *Id.* at 44.

Corey explained that as they approached Hodges, McArthur was standing to Corey's left. *Id.* There was a "little gap" between him and McArthur, as they were not walking "arm in arm." *Id.* Corey saw the gun fall from Hodges's pocket as he tussled with McArthur. *Id.* at 36.

Based on this record evidence, Hodges's counsel did not perform deficiently by failing to move to suppress the gun and drugs. Hodges's claim that the officers could not have observed him rolling a marijuana cigarette is not supported by the evidence. Officer McArthur testified to his experience as a narcotics officer with marijuana. He observed Hodges rolling a marijuana cigarette which qualifies as a criminal activity justifying a *Terry* stop. McArthur did *not* testify that he approached Hodges from the rear. He testified that he approached from the side, approximately 5 or 6 feet away.

Officer Corey's testimony was consistent with that of Officer McArthur. Corey testified that they approached from the north towards Hodges's left side and that he was facing Hodges's rear. He further testified that Officer McArthur was standing with a "little gap" to his left. From Corey's perspective, he could see that Hodges was rolling something, though he could not determine what it was. Because McArthur was standing to Corey's left and was only 5 or 6 feet away from Hodges, it is reasonable to assume that McArthur had a better angle of Hodges's front

than did Corey. The testimony of the two officers regarding their observations differed slightly because they were approaching Hodges from different angles from a short distance.

Hodges's counsel therefore did not perform deficiently by failing to move to suppress the evidence found with Hodges. The record does not support his claim that Officer McArthur's account of the encounter was incorrect. Hodges also has not demonstrated prejudice. Based on the evidence presented, there is no reasonable probability that a motion to suppress would have been successful.

Hodges asserts that the record is insufficient because the Michigan Court of Appeals' denied his motion to remand the matter to the trial court where he could have expanded the record. Yet Hodges's motion to remand filed in the Michigan Court of Appeals did not contain any affidavit or other offer of proof of the facts he wished to present. He offered no evidence to the state courts—and he offers none here—to undermine Officer McArthur's account. The state court's failure to hold an evidentiary hearing on Hodges's claim of ineffective assistance of counsel did not violate his constitutional rights. See *Dowdy v. Sherry*, 2008 WL 5188827, at *5 (E.D. Mich. Dec. 10, 2008); *Ezell v. Cason*, 2007 WL 518853, at *7-*8 (W.D. Mich. Feb. 14, 2007); *May v. Renico*, 2002 WL 31748845, at *4 (E.D. Mich. Nov. 12, 2002).

Hodges's first claim is without merit.

**B.**

Hodges asserts in his second claim that the prosecutor violated due process and the Compulsory Process Clause by failing to identify and make available at trial others who might have witnessed the incident. Hodges asserts that the police made no effort to establish the identities of the other people present, depriving him of the ability to present their accounts of the incident. In the state court Hodges primarily relied on Michigan's "res gestae" rule as a legal basis for this

claim. The Michigan Court of Appeals denied relief on the merits. *Hodges*, 2017 WL 431792, at *2.

Under Michigan law, a prosecutor is required to attach to a criminal information (one of the state charging documents under Michigan law) a list of all witnesses intended to testify at trial and all so-called "res gestae" witness (witnesses who observed the crime). *See* MICH. COMP. LAWS § 767.40a(1)-(2). Hodges's argument that the prosecutor violated this state law is not cognizable. Federal courts do not enforce state laws in a habeas corpus proceeding. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Federal law does not require the production of res gestae witnesses. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001).

Hodges's reliance on a concept as broad as "due process" does not suffice to state a federal habeas claim. *Carey v. Musladin*, 549 U.S. 70 (2006). "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005).

Petitioner attempts to ground his claim in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). That line of established law holds that the suppression of evidence that might be favorable to a defendant may be a violation of the Due Process Clause of the Fourteenth Amendment. *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (per curiam). To succeed on such a claim, a habeas petitioner must show three things: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Hodges makes none of the three showings. First, there is no indication that any of the potential eyewitnesses to the incident would have testified favorably to Hodges or impeached the testimony of the officers. Next, there is no indication that the prosecutor or police suppressed any evidence. Hodges indicates that there were other people present at the transit center at the time of the incident. Officer McArthur testified that there was only one other person, a woman, who was seated near Hodges. ECF No. 6-10, at 27-28. However, he explained that she did not appear to be sitting with Hodges. *Id.* When the incident with Hodges started, everyone in the area "cleared out." *Id.* at 28. After Hodges was placed in custody, there was nobody left in the area but McArthur, Corey, and Hodges. *Id.* There is no indication that the officers knew the identity of the any of the people in the vicinity at the time of the incident. Accordingly, they had no ability to put identifying information in their reports. Finally, in the absence of any statements from uncalled witnesses, Hodges has not demonstrated prejudice.

Hodges's second claim is without merit.

### IV.

In order to appeal the Court's decision, Hodges must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Hodges has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are both devoid of merit. Therefore, a certificate of appealability will be denied.

## V.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**., because an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Dated: May 5, 2020                                          s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge